UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KAVON MARQUISE GREEN,

Petitioner,

v.                                              Case No. 3:19-cv-484-MMH-JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

Respondents.

_____

## ORDER

### I. Status

Petitioner Kavon Marquise Green, an inmate of the Florida penal system, initiated this action on April 24, 2019,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[2] In the Petition, Green challenges a 2013 state court (Duval County, Florida) judgment of conviction for attempted second degree murder and possession of a firearm by a juvenile delinquent found to have committed a felony act. He raises five claims. See Petition at 5-12. Respondents have submitted a memorandum in

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

[2] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

opposition to the Petition. See Response (Doc. 6). They also submitted exhibits. See Docs. 6-1 through 6-3. Green filed a brief in reply. See Reply (Doc. 9). This action is ripe for review.

## II. Relevant Procedural History

On January 10, 2012, the State of Florida charged Green with attempted second degree murder and possession of a firearm by a juvenile delinquent found to have committed a felony act in Duval County case number 2012-CF-275. See Doc. 6-1 at 32. Green entered a guilty plea to both charges on July 24, 2012. See id. at 72-73; 118-31, Transcript of the Plea Proceeding. On October 18, 2013, the court sentenced Green to a term of imprisonment of twenty-five years for count one and a term of imprisonment of fifteen years for count two, to run concurrent with the sentence on count one. See Docs. 6-1 at 87-94, Judgment; 6-1 at 132-54, Transcript of Sentencing Hearing (Sentencing Tr.); 6-2 at 1-36, Sentencing Tr.

On direct appeal, Green, with the benefit of counsel, filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), see Doc. 6-2 at 39-48, and a motion to allow Green to file a pro se brief, see id. at 50-51. The First District Court of Appeal (First DCA) granted Green permission to file a pro se brief. See id. at 53. According to the state-court docket, Green did not file a pro se brief. See onlinedocketsdca.flcourts.org, Kavon Marquise Green v. State of Florida, 1D13-5537 (Fla. 1st DCA). On March 19, 2014, the First DCA affirmed

2

Green's conviction and sentence per curiam without issuing a written opinion, see Doc. 6-2 at 55, and issued the mandate on April 15, 2014, see id. at 57.

Green filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 on September 23, 2014. See id. at 62-77. In his Rule 3.850 motion, Green asserted that his trial counsel was ineffective because he: affirmatively misadvised Green that the motion to suppress had been denied before he entered his guilty plea (ground one), see id. at 65-68; failed to advise him that if the court chose not to sentence him as a youthful offender, the minimum sentence he could receive was a twenty-five year term of imprisonment (ground two), see id. at 68-70; and failed to ensure that Green was competent to proceed before counsel permitted Green to enter a guilty plea (ground three), see id. at 70-75. Green filed a motion to hear and rule on November 18, 2015, see id. at 78; a notice of pending action on February 14, 2017, see id. at 81; and a petition for writ of mandamus on March 10, 2017, see Doc. 6-3 at 135. On May 16, 2017, the First DCA denied the petition for writ of mandamus and encouraged the circuit court "to continue its efforts to expeditiously dispose" of the Rule 3.850 motion. Id. at 165. During the pendency of the petition for writ of mandamus, the postconviction court directed the State to respond to grounds one and three. See Doc. 6-2 at 83-85. The State responded. See id. at 93-101. On June 29, 2017, the court denied the Rule 3.850 motion. See id. at 239-45. On appeal, Green filed a pro se brief, see

Doc. 6-3 at 103-18, and the State filed a notice that it did not intend to file an answer brief, see id. at 120-21. On July 27, 2018, the First DCA affirmed the court's denial of postconviction relief per curiam, see id. at 123, and denied Green's motion for rehearing on September 21, 2018, see id. at 131. The court issued the mandate on October 15, 2018. See id. at 133.

## III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Green's] claim[s] without

4

further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is

unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a

"contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016); see Teasley v. Warden, Macon State Prison, 978 F.3d 1349, 1356 n.1 (11th Cir. 2020). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. A district court's obligation is "to train its attention on the legal and factual basis for the state court's ruling, not to "flyspeck the state court order or grade it." Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1349 (11th Cir. 2019) (citing Wilson, 138 S. Ct. at 1191-92), cert. denied, 140 S. Ct. 394 (2019). Thus, to the extent that a petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights."' <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[4] supra, at 747-748, 111 S. Ct. 2546; Sykes,[5] supra, at 84-85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. 307, 316, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. 53, 60-61, 130 S. Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and

---

[4] Coleman v. Thompson, 501 U.S. 722 (1991).

[5] Wainwright v. Sykes, 433 U.S. 72 (1977).

> prejudice from a violation of federal law. See Coleman,
> 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[6] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

---

[6] Murray v. Carrier, 477 U.S. 478 (1986).

11

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier,</u> 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama,</u> 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per

curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. Additionally, the United States Supreme Court has long recognized that <u>Strickland</u>'s two-part inquiry applies to ineffective-assistance-of-counsel claims arising out of the plea process. <u>See</u> <u>Hill v. Lockhart</u>, 474 U.S. 52, 57 (1985). The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of

13

the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at ---, 131 S.Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the

deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Green asserts that counsel (Assistant Public Defender Todd Niemczyk, Florida Bar #14581) was ineffective because he misadvised Green about the court's disposition of the motion to suppress. <u>See</u> Petition at 5. He states:

> Defense counsel advised Petitioner that the suppression motion had been denied and that he had no further recourse on this motion. This was clearly misadvice as defense counsel never obtain[ed] a ruling but rather withdrew the motion on his own accord. It was with this misadvice regarding the suppression motion that the Petitioner entered his guilty plea.

<u>Id.</u> Respondents argue that Green did not properly exhaust this ineffectiveness claim in the state courts, and therefore the claim is procedurally barred. <u>See</u> Response at 8-12. Green asserts that he did sufficiently exhaust the claim, <u>see</u> Reply at 1-4, and this Court agrees.

15

Green raised this ineffectiveness claim in his Rule 3.850 motion. <u>See</u> Doc.

6-2 at 65-68. The postconviction court ultimately denied the Rule 3.850 motion

with respect to the claim, stating in pertinent part:

> Defendant contends counsel misadvised him that the motion to suppress filed on his behalf was denied, rather than withdrawn. According to Defendant, upon meeting with counsel after the motion was withdrawn, counsel told him the Court denied the motion and there was no further recourse on the motion. Based on counsel's representation, Defendant decided to enter an open plea to the Court. However, Defendant claims had he known of the withdrawal or been present at the hearing where counsel withdrew the motion, he would have insisted counsel follow through on the motion and would have proceeded to trial. Furthermore, had the motion been denied, Defendant would have reserved the right to appeal the denial as being dispositive.
>
> The Court notes that "[a]n allegation that trial counsel provided ineffective assistance by failing to file a motion to suppress is a legally sufficient claim, which is not waived by entry of a plea." <u>Spencer v. State</u>, 889 So. 2d 868, 870 (Fla. 2d DCA 2004). A defendant is not required to allege in a rule 3.850 motion that the motion to request would have been granted; "[i]nstead, 'to show prejudice in a plea bargain case, [the defendant] must show only that without the misadvice of counsel, there was a reasonable probability he would not have pleaded guilty and would have chosen to go to trial.'" <u>Deck v. State</u>, 985 So. 2d 1234, 1238 (Fla. 2d DCA 2008) (quoting <u>Brown v. State</u>, 967 So. 2d 440, 443 (Fla. 4th DCA 2007)).
>
> Reasonable strategic or tactical decisions by counsel do not constitute ineffective assistance of counsel. <u>Thompson v. State</u>, 174 So. 3d 453, 456 (Fla. 1st DCA 2015). While generally an evidentiary

hearing is needed to determine whether a counsel's decisions were the product of strategy, when it is obvious from the record that an attorney's decision[] was strategic in nature, an evidentiary hearing is not required. State v. Williams, 797 So. 2d 1235, 1239 (Fla. 2001) (quoting McNeal v. Wainwright, 722 F.2d 674, 676 (11th Cir. 1984)).

The record reflects counsel filed a Motion to Suppress Statements, Admissions and Confessions on May 2, 2012. (Ex. D.)[7] On May 8, 2012, counsel withdrew the motion, because after further investigation and discovery, including talking with the officer personally, he felt that he did not have legally sufficient grounds to move forward with the motion. (Ex. E at 3.)[8] Here, the transcript expressly demonstrates counsel's reasoning and unequivocally shows that [his] decision was conscious and strategic. Accordingly, for purposes of a Grosvenor[9] analysis, the motion to suppress would not have been successful or dispositive.

Regarding the maximum sentence Defendant faced, pursuant to section 775.087(1)(b), Count One was enhanced to a first degree felony, which is punishable up to thirty years in prison, pursuant to section 775.082(3)(b), Florida Statutes. Furthermore, the record reflects Defendant admitted he was guilty of shooting a firearm into a crowd, hitting a woman in the pelvis. (Exs. F at 9; G at 31-32, 35-37, 49-50.)[10] Therefore, also pursuant to section 775.087, Defendant was subject to at least a twenty-five-year minimum mandatory sentence because he discharged

---

[7] See Doc. 6-3 at 8-9, Motion to Suppress Statements, Admissions and Confessions.

[8] See Doc. 6-3 at 12.

[9] Grosvenor v. State, 874 So. 2d 1176, 1181-82 (Fla. 2004).

[10] See Doc. 6-3 at 23, 54-68.

a firearm causing great bodily harm. § 775.087(2)(a)3., Fla. Stat. Outside of a youthful offender sentence, which the Court refused to impose on Defendant after careful consideration, Defendant could not have received a lesser sentence than the one the court imposed pursuant to his open plea. Accordingly, even if Defendant proceeded to trial and lost, a youthful offender sentence would not have been forthcoming based on the Court's reasoning outlined at the sentencing hearing, and therefore, Defendant received the shortest possible sentence by entering his plea. (Ex. G at 54-56.)[11]

Lastly, during Defendant's plea colloquy, he represented to the Court he was voluntarily entering this plea without coercion or promises, he was satisfied with his attorney and their discussions, he was waiving his constitutional rights associated with a trial, and he was actually guilty of the charged offenses. (Ex. F at 4-9.)[12] Based on these sworn representations to the Court and the meritless nature of the motion to suppress, in conjunction with the fact the Court would not sentence Defendant as a youthful offender and he received the lowest possible sentence, the Court finds there is no reasonable probability Defendant would have foregone his open plea and proceeded to trial. Accordingly, Defendant has failed to demonstrate prejudice and is therefore not entitled to relief on Ground One.

Id. at 240-42. The First DCA affirmed the postconviction court's denial of relief.

See Doc. 6-3 at 123.

---

[11] See Doc. 6-3 at 82-84.

[12] See Doc. 6-3 at 18-23.

To the extent that the appellate court decided Green's claim on the merits,[13] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Green is not entitled to relief on the basis of this ineffectiveness claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Green's ineffectiveness claim is without merit. The record supports the postconviction court's conclusion. There is a strong presumption in favor of competence when evaluating the performance prong of the Strickland ineffectiveness inquiry. See Anderson v. Sec'y, Fla. Dep't of Corr., 752 F.3d 881, 904 (11th Cir. 2014). The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the

---

[13] Throughout this order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1192.

time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005). Thus, Green must establish that no competent attorney would have taken the action that his counsel chose.

Notably, the test for ineffectiveness is neither whether counsel could have done more nor whether the best criminal defense attorneys might have done more; in retrospect, one may always identify shortcomings. Waters v. Thomas, 46 F.3d 1506, 1514 (11th Cir. 1995) (stating that "perfection is not the standard of effective assistance") (quotations omitted). Instead, the test is whether what counsel did was within the wide range of reasonable professional assistance. Ward, 592 F.3d at 1164 (quotations and citation omitted); Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007) ("The question is whether some reasonable lawyer at the trial could have acted as defense counsel acted in the trial at issue and not what 'most good lawyers' would have done.") (citation omitted).

A brief chronology relating to the motion to suppress and Green's guilty plea follows. Green, with the benefit of counsel, filed a Motion to Suppress Statements, Admissions and Confessions on May 2, 2012. See Doc. 6-1 at 67. In the motion, Green stated in pertinent part:

> It is believed that the State intends to offer the following statements, admissions or confessions purportedly made by [Green] at any trial of this cause: [Green]'s interrogation with detectives on December 16, 2011[.]

> The above-mentioned statements should be suppressed for the following reasons: The oral statements obtained from Defendant were not freely and voluntarily given and were a result of continued and persistent questioning by members of the Jacksonville Sheriff's Office under circumstances indicating intimidation or inequality between the interrogators and Defendant so as to impair his freedom of will and thereby amount to compulsion. Said statements were in violation of Defendant's rights guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and by Article I, Section 9, of the Constitution of the State of Florida.

Id. Counsel withdrew the motion to suppress on May 8, 2012, three hours before a scheduled hearing that afternoon. See Docs. 6-1 at 69; 6-3 at 12. In doing so, counsel explained his reasons for withdrawing the motion, stating in pertinent part:

> Judge, that motion was filed to suppress admissions and confessions. Subsequent to the filing of my motion[,] I was able to do more investigation into the circumstances surrounding the interrogation, and it's my feelings now, based on further discovery and talking with the officer personally, that **I don't have legal grounds sufficient enough to allow a hearing on [the motion].**[14]

Doc. 6-3 at 12 (emphasis added).

---

[14] See Hollis v. United States, 958 F.3d 1120, 1124 (11th Cir. 2020); Ferrell v. State, 29 So. 3d 959, 976 (Fla. 2010) (per curiam) ("Trial counsel cannot be deemed ineffective for failing to raise a meritless argument.") (citation omitted).

A few months later at the plea hearing, counsel advised the court in pertinent part:

> Mr. Green is eligible for a youthful offender sentence based on his age. Further, because he is a juvenile, it was my understanding he is precluded from receiving a life sentence. However, he is as charged eligible for a minimum mandatory of 25 years, in the event that Your Honor does not agree after mitigation and sentencing is presented to a youthful offender sentence. I have reviewed that with him as well. At this time[,] we are prepared to go forward with the plea.

Doc. 6-1 at 121. The record also reflects the circuit judge's noncommittal tone when he advised Green that he did not have "the slightest idea" whether he would sentence him as a youthful offender or otherwise, but would determine an appropriate sentence after reviewing the evidence. Id. at 123. Green affirmed that he understood the potential sentences he faced if the court decided not to sentence him as a youthful offender. See id. at 123-24. Notably, defendant's "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977). Green has not overcome this presumption.

Green represented to the court that he was voluntarily entering a guilty plea to counts one and two. See Doc. 6-1 at 121-22. Additionally, he affirmed that he was satisfied with his lawyer, and that he had sufficient time to discuss

the plea and its implications with counsel. See id. at 122-23. As to the potential

sentences that Green faced, the State advised:

> The maximum, 25 to -- it's not life anymore, but
> there have been cases where 70 years was accepted.
> There have been cases where 60 years –
>
>                    . . . .
>
> Technically count 1 carries 25 to life with the
> way it is charged. However, him being a juvenile, there
> is not really life. As to count 2, he is facing 15 years
> with no minimum.

Id. at 123-24. Green affirmed that he understood the potential sentences and

that counsel had discussed them with him. See id. at 124.

At the sentencing hearing, Green acknowledged that he had confessed to

the police that he had pointed a gun at a group of people and shot at them as

they ran away. See Doc. 6-2 at 12-14. Given Green's admission, counsel argued

that the court should sentence Green to a youthful offender sentence, stating

in pertinent part:

> Your Honor, I think first and foremost the
> important thing is that Mr. Green has accepted
> responsibility for his actions. He did enter a plea to the
> Court knowing that he was facing the 25 to life
> sentence, rather than going to trial. He did accept
> responsibility knowing that he did injure an innocent
> person.
>
>                    . . . .
>
> He was interviewed by the police. You heard he
> did admit to his involvement and he even was

23

> emotional during the interview, he did cry. He was I
> believe at first, as most kids tend to, they're scared and
> they don't tell the whole story right out and then he
> did admit that he was the one that shot the gun and
> that he had the gun, but he also stated several times
> that he never meant to hurt anyone. He had no
> intention to hit this woman.

Id. at 21, 23-24. Notably, the State asked that the court sentence Green to a

term of imprisonment of thirty years (with a twenty-five year minimum

mandatory) for count one. See id. at 29.

Even assuming arguendo deficient performance by defense counsel for

failing to act as Green suggests, Green has not shown any resulting prejudice.

He has not shown a "reasonable probability that, but for counsel's errors, he

would not have pleaded guilty and would have insisted on going to trial." Hill,

474 U.S. at 59. If Green had proceeded to trial, and the jury had found him

guilty, he would have faced a possible term of imprisonment of more than

twenty-five years (with a twenty-five year minimum mandatory sentence) for

count one (attempted second-degree murder, a first-degree felony) and a term

of imprisonment of fifteen years for count two. See Docs. 6-1 at 87, Judgment.

His ineffectiveness claim is without merit since he has shown neither deficient

performance nor resulting prejudice. Accordingly, Green is not entitled to

federal habeas relief on his ineffectiveness claim in ground one.

## B. Ground Two

Green asserts that counsel was ineffective because he failed to inform Green that he faced a twenty-five year minimum mandatory term of incarceration if the court decided not to sentence him as a youthful offender. See Petition at 7. Green concedes this claim fails. See Reply at 18. Therefore, the Court deems ground two to be withdrawn and will not address it.

## C. Ground Three

As ground three, Green asserts that counsel was ineffective because he failed to ensure that Green was competent to proceed before he entered a guilty plea. See Petition at 8. He states that he involuntarily entered the guilty plea due to "the combined effects" of psychotropic medications (Seroquel, Wellbutrin, and Abilify) for his mental illness. Id. Respondents argue that Green did not properly exhaust this ineffectiveness claim in the state courts, and therefore the claim is procedurally barred. See Response at 15-17. Green asserts that he did sufficiently exhaust the claim, see Reply at 5-7, and this Court agrees.

Green raised the ineffectiveness claim in his Rule 3.850 motion. See Doc. 6-2 at 70-75. The postconviction court denied the motion as to the claim, stating in relevant part:

> Defendant contends he was denied effective assistance of counsel because counsel failed to ensure Defendant was competent to proceed prior to the plea

25

of guilty. Specifically, Defendant contends he was under the influence of various medications at the time of the plea, which rendered him unable to comprehend the guilty plea.

A claim that counsel was ineffective for failing to object to a defendant entering a plea because the defendant was under the influence of psychotropic medication can be refuted by the record "when the defendant affirmatively states that his medication does not affect the knowing and voluntary nature of his plea." Russ v. State, 937 So. 2d 1199, 1201 (Fla. 1st DCA 2006).

During the plea colloquy, in response to the Court's query, Defendant testified that he was not under the influence of drugs, alcohol or medication. (Ex. [F] at 5.)[15] Therefore, his claim is refuted by the record. Id. Furthermore, Defendant is estopped from receiving an evidentiary hearing on this ground, because the basis of the claim is that he lied under oath. Polk, 56 So. 3d at 808.[16] Lastly, the record reflects counsel did have Defendant evaluated and Doctor William Legume testified at the sentencing hearing that Defendant was competent to proceed. (Ex. G at 9.)[17] Accordingly, the record refutes Defendant's claim of deficient performance and prejudice. For these reasons, Defendant is not entitled to relief on Ground Three.

Id. at 244-45. The First DCA affirmed the postconviction court's denial of relief.

See Doc. 6-3 at 123.

---

[15] See Doc. 6-3 at 19.

[16] Polk v. State, 56 So. 3d 804 (Fla. 2d DCA 2011).

[17] See Doc. 6-3 at 37.

To the extent that the appellate court decided the claim on the merits,[18] the Court will address it in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Green is not entitled to relief on the basis of this ineffectiveness claim.

Even if the appellate court's adjudication of the claim is not entitled to deference, Green's ineffectiveness claim is still without merit. The record supports the postconviction court's conclusion. At the plea hearing, Green acknowledged that the plea was freely and voluntarily entered without threats, coercion, or promises enticing him to enter a plea. See Doc. 6-1 at 121-22. He affirmed that he was not under the influence of any drugs, alcohol, or medications and that he understood what was transpiring in the courtroom. See id. at 122. He also acknowledged that he was pleading guilty to the charges because he was in fact guilty and that there was a factual basis for the court to adjudicate him guilty of the charges. See id. at 126. At the sentencing

---

[18] See Wilson, 138 S. Ct. at 1192.

hearing, Dr. Legume, a psychologist, testified that he evaluated Green and found him to be competent to proceed. See id. at 140, 149. Notably, Green testified that the medications calm him and that he does "better" when he takes them. See Doc. 6-2 at 10. He also explained that he has been "doing good" since he has been taking the medications. Id.

Green has failed to carry his burden of showing that his counsel's representation fell outside that range of reasonable professional assistance. Even assuming deficient performance by defense counsel, Green has not shown any resulting prejudice. Thus, his ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice. Accordingly, Green is not entitled to federal habeas relief on his ineffectiveness claim in ground three.

### D. Grounds Four and Five

Green asserts that the state postconviction court erred when it summarily denied the ineffectiveness claims (related to his motion to suppress and incompetency) raised in his Rule 3.850 motion. See Petition at 10, 12. He challenges  a defect in the state postconviction process, i.e., the postconviction court's failure to conduct an evidentiary hearing on the issues. See Reply at 28. Respondents argue that Green's assertions involve "infirmities in his state postconviction relief proceeding," Response at 45, that are not cognizable on federal habeas review, and this Court agrees.

The Eleventh Circuit "has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief." Carroll v. Sec'y, Dep't of Corr., 574 F.3d 1354, 1365 (11th Cir. 2009) (citations omitted). "The reasoning behind this well-established principle is straightforward: a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment — i.e., the conviction itself — and thus habeas relief is not an appropriate remedy." Id. (citations omitted); Anderson v. Sec'y for Dep't of Corr., 462 F.3d 1319, 1330 (11th Cir. 2006) (per curiam); Quince v. Crosby, 360 F.3d 1259, 1261-62 (11th Cir. 2004); Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987) ("Neither the state court's failure to hold a hearing on petitioner's 3.850 motion nor its failure to attach the relevant portions of the record in any way undermines the validity of petitioner's conviction. Because [the] claim[] goes to issues unrelated to the cause of petitioner's detention, it does not state a basis for habeas relief.") (citations omitted). As such, Green is not entitled to federal habeas relief on grounds four and five.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Green seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make

this substantial showing, Green "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El</u>, 537 U.S. at 335-36 (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED**:

1.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Green appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 3rd day of January, 2022.

MARCIA MORALES HOWARD
United States District Judge

Jax-1 1/3
c:
Kavon Marquise Green, FDOC #J47936
Counsel of Record

31